( Decided March 12th, 1867.)

THE SCHOOL COMMISSIONERS OF BALTIMORE CITY *vs.* THE STATE BOARD OF EDUCATION.

CONSTITUTIONAL LAW: MANDAMUS; PUBLIC SCHOOLS OF BALTO. CITY.—THE 8TH ARTICLE OF THE CONSTITUTION OF 1854, evidently contemplates a system of Public School Education throughout the State, not exluding the city of Baltimore.

The last clause of the 3rd section of said Article cannot be construed to mean that the system itself as established in Baltimore city prior to the adoption of the Constitution, was re-enacted as part of the Constitution of the State, and placed beyond legislative control; it simply acknowledges the existing mode of organization of School Commissioners in that city and their appointment, and provides for changes in this respect only to be made from time to time by the General Assembly and the Mayor & City Council of Baltimore.

But whether the organization or mode of appointment of the City Commissioners *only* was meant, or that the system itself was intended to be carried into and made a part of the Constitution, the reservation of the power to alter and amend was equally necessary where legislative control was to be preserved.

Whatever room there might be for doubt as to the true construction of the said 3rd Art. there can be none as to the power of the Legislature to pass a law or laws altering or changing what is there enacted in reference to the public schools of the city of Baltimore, whether regarding it as pertaining to the mode of appointment of the commissioners or to the system of education and the conduct of its schools. The Act of 1865, ch. 160, may therefore lawfully embrace terms and provisions affecting the public schools of the city of Baltimore, established there prior to, and in existence at the time of the adoption of the Constitution of the State.

The Act of 1865, ch. 160, by its letter and in its spirit, and looking to the design of the Constitution upon the subject of public education is applicable to and operative in the city of Baltimore, and vests in the State Board of Education the exclusive power and authority of selecting and prescribing the text-books to be used in the public schools of that city.

Appeal from the Superior Court of Baltimore city.

This was a petition filed by the appellees praying for a *mandamus* against the appellants, commanding them to use in the public schools and high schools of Baltimore city, such text-books as had been or might be prescribed by the State Board of Education, as the uniform series of text-books to be used in the schools of the State.

The allegations of the petition and answer are briefly stated in the opinion of this Court.

There was no dispute as to the facts of the case. And after final hearing of the cause the Court below, ( Martin, J.,) filed the following opinion and order.

"In this case I will sign an order making absolute the rule to show cause why a *mandamus* should not issue, as prayed for in the petition, on the ground that upon the true construction of the Act of Assembly of 1865, ch. 160, the

Legislature of Maryland, in the exercise of its paramount police power over all the municipal corporations of the State, in connection with the high purpose of establishing in each county, and in all the cities, a system of Free Public Schools, is to be considered as having confided to the State Board of Education the important duty of selecting and prescribing the kind of text-books to be used in all the public schools, and in the high schools of the State, including the city of Baltimore; and having determined on the character of the books proper to be adopted as text-books, then to impart to the series uniformity; and that the constitutional right of the Legislature to pass an Act conferring the authority on the State Board of Education, belongs to that department of the goverment as the parent power from which all the political corporations of State derive their existence, and is recognized and retained under the grant of power to be found in the 3d section of the 8th Article of the Constitution of 1864. 15 *Md. Rep.*, 380. Assuming that the allegations contained in the petition are true, and they are not controverted by the answer of the defendants, then it is clear, on the cases of *Rex vs. Barker*, 3 *Burr.*, 1268; *Kunkel and Winemiller, 4 H. & McH.*, 429; *and Harwood vs. Marshall*, 9 *Md. Rep.*, 83; that the petitioners are entitled to the writ of *mandamus*, as affording the only specific and adequate remedy through the instrumentality of which they can be placed in a position to discharge the duties and perform the services imposed upon them by the Act of Assembly to which I have referred.

"It is thereupon this 2nd day of January, 1867, by the Superior Court of Baltimore city, adjudged and ordered, that no sufficient cause having been shewn, nor any reason appearing why a *mandamus* should not issue as prayed, that the rule be made absolute, and that a *mandamus* issue as prayed."

From this order the respondents appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Wm. Price*, City Counsellor, and *C. L. L. Leary*, City Solicitor of Baltimore city, for the appellants, argued :

1st. That the Act of Assembly of 1865, ch. 160, entitled "An Act to add a new Article to the Code of Public General Laws, to be entitled 'Public Instruction,' providing a uniform system of free public schools," &c., so far as the same may conflict with the Acts of the General Assembly of the State, and the ordinances of the city of Baltimore existing and in force at the time of the adoption of the new Constitution of the State, is repugnant thereto, and therefore null and void.

Under the last clause of the 3d section, of Article 8, of the new Constitution, the School Commissioners of Baltimore city, irrespective of the Act of 1865, ch. 160, "remain" as they were "constituted" when the Constitution was adopted. The School Commissioners of Baltimore city and the system of public instruction administered by them, were organized and their powers defined by the ordinances of the Mayor and City Council of Baltimore, passed in pursuance of the following Acts of Assembly : *Acts of* 1825, *ch.* 162, *sec.* 21 ; 1827, *ch.* 183 ; 1836, *ch.* 220 ; 1837, *ch.* 285 ; 1845, *ch.* 120 ; 1849, *ch.* 146 ; 1852, *ch.* 287 ; 1858, *ch.* 295.

Ordinance No. 40, of revised ordinances of 1858, provides for the organization of the Board of School Commissioners of Baltimore city, and by section 6, of said ordinance, it is made the duty of said Board "to employ teachers and determine their salaries ; to prescribe the courses of study, and the books to be used, to make all such by-laws for their own government, and all such rules and regulations for the management of the schools, as they may deem expedient," &c.

Under the last clause of the 3d section, of the 8th Article of the Constitution above referred to, these Acts of Assembly and the above mentioned city ordinances, under and by virtue of which the Board of School Commissioners of Baltimore city were "constituted" and "appointed," remain in full force, and are intended to operate as constitutional provisions. The system of public instruction administered by said board, is designed to "remain" as it was organized under said laws and ordinances, and as a separate and distinct system ; and the Legislature, in providing by law for a uniform system of free public schools, at its first session after the adoption of the Constitution as required by section 4, of Article 8, is bound to recognize the separate existence of the school system of the city of Baltimore, and is prohibited from interfering with it.

The last clause of the 3d section, of Article 8, by which the Constitution of the Board of School Commissioners of Baltimore city, is made subject to such alterations and amendments as may be made from time to time by the General Assembly, &c., confers authority on the Legislature to make such alterations and amendments, only after a general system shall have been established for the State as required by the 4th section, of Article 8. It was the intention of the framers of the Constitution, that the city system of public instruction, as it existed when the Constitution was adopted, should be incorporated into the State system, and its efficiency or inefficiency tested and determined, and that the Legislature afterwards should be at liberty to alter or amend it, as circumstances might require. See 2 *Debates in Maryland Convention of* 1864, *pp.* 1227, 1228.

For the rules of construction of the Constitution, we refer to *Bandel vs. Isaac*, 13 *Md. Rep.*, 223. *State vs. Mace*, 5 *Md. Rep.*, 351. *Manly vs. State*, 7 *Md. Rep.*, 147.

2nd. Even if the above construction of the present Con-

stitution be not affirmed by the Court, we contend that the provisions of the Act of 1865, ch. 160, in relation to the use and selection of text-books are inapplicable to the public schools of Baltimore city, and they are excluded from its operation. *Act*, 1865, *ch.* 160 ; *title* 1, *sub-chap.* 2, *sec.* 2, *p.* 270 ; *title* 1, *sub-chap.* 3, *sec.* 7, *p.* 273 ; *title* 2, *sub-chap.* 7, *sec.* 1, *p.* 285.

*Wm. Schley* and *John M. Frazier* for the appellee.

The petitioner is a public body, created by the second section of the 8th Article of the Constitution. The defendant is a public body, recognized by the third section of the same Article of the Constitution.

By the Act of 1865, chapter 160, it was enacted, that there shall be a uniform system of free public schools, in each county of the State, and in every incorporated city ; and that the supervision and control of public instruction should be in the State Board of Education, in the State Superintendent of Public Instruction, and in Boards of School Commissioners for the city of Baltimore and for each county ; and that the State Board of Education should select a uniform series of text-books, for use in every public school and high school established or aided under said Act, &c., secs. 2, 3, 4 and 5.

The petition states, that the State Board of Education established a uniform series of text-books, and notified the several Boards of City and County School Commissioners that they had done so ; but the Board of School Commissioners of Baltimore city declined and refused to recognize the right of the State Board of Education to prescribe a uniform series of text-books, to be used in the public schools and the high schools of Baltimore city ; and claim the right to use, in the public schools and in the high schools of Baltimore city, such books as they consider proper to be used in said schools, and have adopted for use,

and are using in said public schools and in the high schools of Baltimore city, certain books, not included or embraced in the uniform series of text-books, selected by the State Board of Education ; and have not introduced, and are not using in said schools, certain of the text-books selected by the State Board of Education, as part of the uniform series of text-books, &c.

The petitioner prayed for a rule requiring the defendant to shew cause why a *mandamus* should not issue, commanding the defendant to use in the public schools and in the high schools of Baltimore city, such text-books only as have been, or may be prescribed by the State Board of Education, as the uniform series of text-books to be used in the schools of the State.

An answer was filed to said petition on the 18th of May, 1866, admitting the allegations of the petition ; but insisting that, upon the true construction of the Constitution and the Act of 1865, the State Board of Education has no control over the School Commissioners of Baltimore city. And the answer further insists, that defendant is not a corporation.

There being no controversy as to facts, the inquiry is limited to the true construction of the Constitution, said Act of 1865, and the ordinances of the city of Baltimore.

On the part of the appellees it is insisted that :

1st. "The Board of School Commissioners of Baltimore city" is a corporate body.

2nd. But if not technically so, the board is a public body, charged with the performance, as a board, of public duties, and may therefore be controlled in a matter public in its nature, in which said board has no discretion, by the writ of *mandamus*. *Moses on Mandamus*, 102, ch. 17, and cases there cited. *People vs. Supervisors of Columbia County*, 10 *Wend.*, 363. *McCollough vs. Mayor of Brooklyn*, 23 *Wend.*, 458. *Tapping on Mandamus*, 12, and

cases cited in the opinion of the judge below. 15 *Md. Rep.*, 376, 378, 380.

3rd. The powers of the State Board of Education are co-extensive with the territorial limits of the State. The provisions of the Constitution in relation to the manner of appointing the School Commissioners of Baltimore city, do not exempt the said Commissioners from the control of the State Board of Education. The Constitution and the Act of 1865, ch. 160, upon just construction, admit of no other interpretation than that given by the learned Judge of the Superior Court.

WEISEL, J., delivered the opinion of this Court.

We have had no difficulty in coming to a conclusion upon the questions presented by the record in this case.

It is an appeal from an order of the Superior Court of Baltimore city directing a *mandamus* to issue, on the application of the State Board of Education, against the School Commissioners of Baltimore city, commanding them to use in the public schools and in the high schools of Baltimore city, such text-books as have been or may be prescribed by the State Board of Education, as the uniform series of text-books to be used in the schools of the State.

The petition of the State Board of Education states that they claiming the right, have adopted certain books as text-books, for use in the public schools and high schools of Maryland, including the city of Baltimore, and charges that the School Commissioners of Baltimore city have refused to recognize this right of the petitioner, to prescribe a uniform system of text-books to be used in the schools of that city, and have introduced into said schools of the city certain other text-books not adopted by the State Board to be used in the public schools of the State. This is not denied but admitted by the appellants, and is claimed as a right independently of the authority of the State Board of Educa-

tion, and regardless of the demands, in that behalf, of the State Superintendent of Instruction to use in the public high schools of Baltimore city, such books only as the said board consider proper to be used therein.

This conflict of claim and authority is to be determined by the true construction of the 3rd section of the 8th Article of the Constitution of the State; and this is, as was truly remarked by the learned counsel of the appellants·in his concluding argument, the only question for our consideration.

The General Assembly of this State, at its session in 1825, (chap. 162,) passed an Act to provide for the public instruction of the youth throughout the State in primary schools, but to take effect and be valid only in those counties which, by a majority of their voters respectively at the next election of delegates to the General Assembly after its passage, should declare in its favour. But with regard to Baltimore city, it provided, in the 21st section, as follows:

"That the establishment and regulation of public or primary schools within the city of Baltimore, shall be vested in the Mayor and City Council of Baltimore; provided, that if the said Mayor and City Council shall not, within the space of five years after the passage of this Act, establish a system of public education within said city, then this Act to be in full effect within the city of Baltimore."

The city of Baltimore exercised the power vested in its authorities by this Act, and established a system of common school education which was in full and successful operation, (as it is now,) when the present Constitution of the State was framed and adopted. It grew up and matured under various laws of the State and ordinances of the city, which it is not necessary for us to notice. By an ordinance in 1858, (Revised Ordinances of that year, No. 40,) it was provided, among other things, that the Board of Commission-

514 MARYLAND REPORTS.

School Comm'rs of Balto. City *vs.* State Board of Education.

ers of the public schools of the city, created by that ordinance, should have charge of said schools, employ teachers, determine their salaries, prescribe the courses of study, and the books to be used, &c., &c. ·

In 1864, when the Convention assembled to remodel the Constitution of the State, the subject of public instruction was made a distinct Article of the organic law. That Article provides for the appointment of a State Superintendent of Public Instruction, and imposes on him the duty of reporting to the General Assembly within thirty days after the commencement of its first session under the Constitution, a uniform system of free public schools. It created a State Board of Education, consisting of the Governor, Lieutenant-Governor, the Speaker of the House of Delegates, and the State Superintendent of Public Instruction, with such duties as the General Assembly might direct. It then, in the 3rd section, provides for the appointment in each county of the State, by the State Board of Education, of such number of School Commissioners as the State Superintendent should deem necessary, to perform such duties as the General Assembly or the State Superintendent might direct; and then proceeds in immediate connexion, in these words: "The School Commissioners of Baltimore city shall remain as at present constituted, and shall be appointed, as at present, by the Mayor and City Council, subject to such alterations and amendments as may be made from time to time by the General Assembly, or the said Mayor and City Council."

The next section required the General Assembly at its first session after the adoption of the Constitution, to provide a uniform system of free public schools, by which a school shall be kept open and supported free of expense for tuition in each school district, for at least six months in the year, said system to be subject to such alterations, conformable to this Article, as the General Assembly may from time to time enact.

At the session of the General Assembly in January, 1865, (which was the first after the adoption of the Constitution,) an Act, (chap. 160,) was passed, entitled, "An Act to add a new Article to the Code of Public General Laws to be entitled, 'Public Instruction,' providing a uniform system of free public schools for the State of Maryland, and to repeal all existing laws inconsistent therewith."

Under various sections and clauses of this law, the State Board of Education (the appellees in this cause) claim the exercise of the right and power to supervise and control the public instruction in the city of Baltimore, to contract for and prescribe the text-books for the use of the schools therein, to be uniform with those used in all the schools of the State, and to perform other duties imposed upon them.

On the part of the appellants, the School Commissioners of Baltimore city, it is contended, that by the last clause of the 3rd section of the 8th Article of the Constitution, (quoted above,) the system of public instruction in the city of Baltimore, as it existed at the time of the adoption of the Constitution, and all the laws of the State and ordinances of the city by which it was established and sustained, became a part of the Constitution itself, and that system was declared a separate and distinct one, not to be affected by the law which the General Assembly was to pass at its first session after the adoption of the Constitution, but only by such laws or ordinances as the General Assembly or the Mayor and City Council of Baltimore should afterwards pass in relation to that system itself.

This Court has carefully examined all the sections of this Article of the Constitution, and regarding the object in view, and noting the phraseology of all its parts, we cannot embrace the construction put upon the clause of the 3rd section referred to by the counsel of the appellants and supported by the zeal and ability exhibited in the argu-

ment. The Article contemplates a system of public school instruction throughout the State, and it does not except the city of Baltimore from its operation in express terms. On the contrary, it refers to the city of Baltimore in more places than one, and if these references do not satisfy the mind that they necessarily exclude that city from its operation, such a conclusion cannot reasonably be adopted. The object of the constitutional provision is a uniform system of free public schools ; to effect this a State Superintendent and a State Board of Education, consisting of him and the principal official personages of the State, are created, and a law of the State required to be passed, by which a school shall be kept open and supported in each school district, for at least six months in the year. The third section is taken up with the appointment of the School Commissioners throughout the State, directing their number, tenure of office, duties, compensation and mode of appointment in the several counties of the State ; but as to Baltimore city, the School Commissioners there shall remain as at present constituted, and shall be appointed, as at present, by the Mayor and City Council. This language, we think, cannot be so construed as to mean that the system itself, as established in Baltimore, was re-enacted as a part of the Constitution of the State, and placed beyond legislative control, but it simply acknowledges the existing mode of organization of School Commissioners in that city, and their appointment, and provides for changes in this respect, and none other, from time to time by the General Assembly or the Mayor and City Council of Baltimore. Convenience and expediency both recommended this as judicious in regard to an existing organization in a part of the State, whilst the entire machinery elsewhere was to be put into motion, and in a matter in which there would be no necessary or even probable conflict with it when in full operation. And whether the organization or mode of ap-

pointment of the City Commissioners only was meant, or the system itself was intended to be carried into and made a part of the Constitution, the reservation of the power to alter and amend was equally necessary, where legislative control was to be preserved. No argument, therefore, can be based upon this peculiarity in the structure of the clause in favor of the construction given by the appellants.

The design of the Constitution to include the city of Baltimore in the State system of education, is also apparent from the provisions of the 5th section, for levying an equal annual tax, by the General Assembly, on all the taxable property throughout the State, for the support of the Free Public Schools, to be distributed among the counties and the city of Baltimore in proportion to their respective population between the ages of five and twenty years. The same view is supported by the language and purposes of the 6th section, which, though now repealed, can be consulted in the interpretation of other provisions of the Article.

If, however, there should be room for doubt as to the true construction of the 3rd section, there can be none as to the power of the Legislature to pass a law or laws altering or changing what is there enacted in reference to the public schools of the city of Baltimore, whether regarding it as pertaining to the mode of appointment of the commissioners or to the system of education and the conduct of its schools. This is expressly provided for by the 3rd section, as already shown, and therefore the law of 1865, ch. 160, may lawfully embrace terms and provisions affecting the public schools of the city of Baltimore established there prior to and in existence at the time of the adoption of the Constitution of the State.

To meet this construction and yet to maintain the action and course of proceeding of the school commissioners of Baltimore city, charged and complained of in the petition

for a *mandamus* against them, it is contended on their be-
half, that the provisions of the Act of 1865, ch. 160, in re-
lation to the selection and use of text-books, apply exclu-
sively to the several counties of the State, and not to the
public schools of Baltimore city, and are inoperative there.

We turn to the Act itself to see how far this point is
maintainable.

The title and first general section of the Act declare,
that there shall be a new Article of Public Instruction ad-
ded to the Code of Public General Laws, and that accord-
ing to the provisions of the Act, there shall be a uniform
system of free public schools in each county of the State,
and in every city now incorporated, or which may hereafter
be incorporated in it. No section or clause, in express
terms, excepts Baltimore city from the general operations
of the Act. The few particular exceptions in reference to
that city only conform their provisions to that of the Con-
stitution of the State, already noticed, touching the organ-
ization of the schools in that city. These exceptions only
prove the rule, that in all other respects the system itself
is applicable to that city, and this is distinctly shown by
the various provisions which connect the schools in that
city with those in the counties. For instance, the counties
and the city of Baltimore are to be divided into school dis-
tricts, except that the mode of dividing the city into dis-
tricts and locating school houses therein, shall be fixed by
the Mayor and City Council of Baltimore. *Title* 1, *ch.* 4,
*sec.* 5. The two following sections 6 and 7, direct how the
teachers in each district shall be employed under the by-
laws adopted by the State Board of Education, and pre-
scribe the shortest period in the year in which instruction
shall be given in each school district. These and the sec-
tions which follow in the same chapter, are all general in
their character, not excepting Baltimore from their opera-
tions, as does the 5th section, in the mode of districting the

city. Passing on to the next title, we find chap. 2, sec. 6, providing that the location of school houses in Baltimore city, and all matters connected with the building and furnishing of them, are to be decided by or under the directions of the Mayor and City Council. This conforms to sec. 5, ch. 4, above, and to the provision in the Constitution, but sec. 4 of the same chap. prescribes the same punishment for injuring school houses in the counties and in Baltimore city. A reference to other sections in the Act will show conclusively that Baltimore city is embraced in the system. See *Title 2, ch. 4, secs.* 1, 2, 8. *Title 2, ch.* 5, *secs.* 4 & 5. The last expressly provides, that the salaries of teachers in the city of Baltimore and each county, shall be fixed by the Board of School Commissioners of the city and the several counties. *Title 2, ch. 6, sec.* 1. *Title* 2, *ch.* 8, *secs.* 1 & 9. *Title 2, ch.* 9, *secs.* 6, 7, 8. *Title* 3, *ch.* 1, *sec.* 2. *Title 3, ch. 4, secs.* 1, 5, 11. *Title Miscellaneous, ch.* 1, *secs.* 1 & 2. *Title Miscellaneous, ch.* 2, *sec.* 1.

And then in the title, *Sources of Income, ch.* 1, *secs.* 1, 2, 6, 7 & 8, provisions are made for the levy of an equal State tax on the taxable property throughout the State for the support of the Free Public Schools, to be paid into the Treasury, and to be reported by the Comptroller of the State to the State Superintendent of Instruction, who is to apportion the same among the counties and the city of Baltimore. The school fund is distributed among the counties and the city as heretofore, and all other local tax laws for school purposes in the counties and the cities of the State are repealed.

This examination satisfies the mind that Baltimore city is embraced within the system of public schools established by that Act.

Upon the particular subject of text-books, we entertain no doubt. Baltimore city being included in the system, the Act is still more specific upon this particular branch of

the inquiry. The supervision and control of Public In-
struction are vested in the State Board of Education, the
State Superintendent of Public Instruction, and in School
Commissioners for the city of Baltimore and each county.
*Title* 1, *ch.* 1, *secs.* 1, 2, 3. The Board of Education "shall
select a uniform series of text-books for use in every public
school and high school established or aided under this Act."
Same *Title, ch.* 2, *sec.* 2. "The State Superintendent shall
have the supervision of all the public schools in the State."
He shall report annually to the Governor, "all such plans
and suggestions for the improvement of the schools and the
advancement of Public Instruction in the State as he shall
deem expedient." "The State Board of Education shall
make such contracts for text-books, for the use of the
schools established by this Act, as in their judgment they
may deem advisable, and the State Superintendent shall
superintend the issuing of the books so contracted for, to
the several Boards of *City* and County School Commission-
ers, as they may require them." Same *Title, ch.* 3, *secs.* 2,
4, ( *sub-sec.* 4,) & 7. The same subject is specifically pro-
vided for in chap. 7, entitled, *"Text-Books."* It is to be
noted that this and the other chapters under this first title
of the law, embrace the various subjects of supervision, and
to secure harmony, uniformity, virtue, and efficiency in the
system of public instruction, are the declared objects and
purposes, as well required in the city of Baltimore as in
the other portions of the State.

The law also repeals all sections of the several Articles
of the Codes of Public General and Local Laws relating to
schools, and all Acts of Assembly passed since the adop-
tion of said Codes relating to schools, inconsistent with its
provisions. *3rd general section,* 300.

We are, therefore, of opinion, from this examination of
the law, by its letter and its spirit, and looking to the de-
sign of the Constitution upon the subject of public educa-

tion, that the Act of 1865, ch. 160, is applicable and operative in the city of Baltimore, and that it vests in the State Board of Education the exclusive power and authority of selecting and prescribing the text-books to be used in the public schools of that city.

The point in the appellants' brief, that a *mandamus* could not lie against the School Commissioners of Baltimore city, was abandoned in the argument in this Court.

The order of the Superior Court of Baltimore city, directing a peremptory *mandamus* to issue as prayed by the petition of the appellee, will therefore be affirmed with costs.

<em>Order affirmed.</em>